UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| W.G. BARR MANAGEMENT, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>CONTEKPRO LLC,<br><br>    Defendant. | Case No. 23-cv-02257-TSH<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 47, 48 |

## I. INTRODUCTION

Plaintiff W.G. Barr Beverage Co. (d/b/a Two Pitchers Brewing Co., "Two Pitchers") alleges Defendant ContekPro, LLC breached their agreement for ContekPro to build and deliver a pre-inspected, finished Kitchen Container to Two Pitchers' taproom in Oakland. Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 47 (Pl.'s Mot.), 48 (Def.'s Mot.). The Court finds the motions suitable for disposition without oral argument and **VACATES** the June 13, 2024 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **DENIES** Two Pitchers' motion and **GRANTS** ContekPro's cross-motion.[1]

## II. BACKGROUND

Two Pitchers, located in Oakland, California, is a start-up company that brews and distributes craft shandies, which are lagers mixed with natural fruit and fruit juices. First Am. Compl. ¶ 8, 13, ECF No. 11. ContekPro, located in Tigard, Oregon, manufactures and delivers commercial kitchen units built within shipping containers. Attahri Decl. ¶ 3, ECF No. 48-2.

On May 18, 2020, Two Pitchers entered into a contract with ContekPro for the

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 55, 60, 61.

1    manufacture and delivery of a commercial Kitchen Container to a taproom Two Pitchers would be

2    opening in Oakland.  First Am. Compl. ¶ 13; Arghavani Decl., Ex. 1 (Contract), ECF No. 47-3.

3    The contract provided for a delivery date of approximately September 1, 2020, and the parties

4    subsequently agreed to a delivery date of March 1, 2021.  Contract at 3; Arghavani Decl., Ex. 2

5    (Attahri Dep.) at 15:12-16:7, ECF No. 47-4.  Two Pitchers made full payment to ContekPro under

6    the contract.  Attahri Dep. at 15:6-11.

7         Two Pitchers alleges there were four breaches of the contract, as summarized below.

8    **A.   California Manufactured Building Sticker**

9         The contract specified that ContekPro "certifies that it will construct the buildings exactly

10   as detailed in the approved plans," and "guarantees the buildings will receive a State of California

11   manufactured building sticker."  Contract at 4.  A California manufactured building sticker

12   signifies that a building is pre-inspected and meets all California requirements for using the

13   building.  Attahri Dep. at 19:7-10; Arghavani Decl., Ex. 5 (Hester Dep.) at 19:10-17, ECF No. 47-

14   7.

15        ContekPro scheduled an inspection for the container to receive a California manufactured

16   building sticker on March 24, 2021.  Arghavani Decl., Ex. 6 (Email re: Container Shipment

17   Timeline); *id.*, Ex. 24 (Email re: Two Pitchers) at 3-8.  However, the inspection never took place.

18   Attahri Dep. at 33:21-34:15; *id.*, Ex. 3 at 3 (ContekPro Response to Interrogatories, 1); *id.*, Ex. 7 at

19   3 (ContekPro Requests for Admission, 1).  ContekPro never told Two Pitchers what happened

20   with the scheduled March 24 inspection, nor did it explain why it had not obtained the sticker.

21   Hester Dep. at 150:11-151:16.  The container never received a California manufactured building

22   sticker.  Attahri Dep. at 33:21-34:11; 74:3-5; *id.*, Ex. 7 at 3 (ContekPro Requests for Admission,

23   1); Hester Dep. at 246:12-24.

24   **B.   Timing of Completion and Inspection**

25        The container was shipped unfinished from ContekPro's facility in Oregon to Two

26   Pitchers' taproom site on or about April 6, 2021.  Arghavani Decl., Ex. 8 (Email re: Two Pitchers

27   Container Shipment); Attahri Dep. at 46:20-22.  The parties dispute the reasons why the container

28   was shipped unfinished and the degree of completion when it was shipped.  However, it is

1   undisputed that the container was not pre-inspected, and because it was not finished when
2   delivered, the container was not ready for final inspections. Hester Dep. at 210:13-211:2; Attahri
3   Dep. at 38:4-5; 57:1-58:11; 74:3-5.  In July, Attahri acknowledged the container was still
4   unfinished.  Arghavani Decl., Ex. 16 (text messages from Yassine Attahri); *id.*, Ex. 17 (same);
5   Attahri Dep. at 40:24-41:4; 62:8-19; 64:12-65:12.  As of July 28, 2021, ContekPro's work on the
6   container was not complete and it was not ready for final inspection.  Attahri Dep. at 65:8-12;
7   Hester Dep. at 212:12-24.  Two Pitchers subsequently hired other contractors to finish the work on
8   the container and to secure all final inspections.  Arghavani Decl., Ex. 18 (email re: Recap Email);
9   *id.*, Ex. 9 (Tallon Dep.) at 169:9-171:1.  The container did not pass final inspections until
10  September 1, 2021.  *Id.*, Ex. 19 (email re: Container Delay Timeline).

**C.   Code Requirements**

The contract provides that "ContekPro tests all electrical, water, and gas components of the product and ensures all components work and meet appropriate codes."  Contract at 5.  Two Pitchers contends ContekPro's work did not meet appropriate codes and that the Container could not pass Oakland city code inspections even by the end of July, four months after it was delivered. Pl.'s Mot. at 6 (citing Attahri Dep. at 64:12-21; Hester Dep. at 83:7-85:6; 90:4-9; 245:18-246:11).

**D.   Costs of Rectifying Deficiencies**

The contract provides that "[i]f the buildings are not constructed as planned, buyer/end user may enter a claim for the cost of rectifying any issues."  Contract at 4.  On September 9, 2021, Two Pitchers' counsel sent a letter to ContekPro alleging that ContekPro had breached the contract by failing to deliver a finished, pre-inspected container.  Arghavani Decl., Ex. 20 at 2 (Email re: Breach of Contract Claim); Attahri Decl., Ex. B (same), ECF No. 48-4.  That letter did not include a claim for the cost of rectifying issues with the container.  Arghavani Decl., Ex. 20; Answer ¶ 24, ECF No. 16; Attahri Decl., Ex. B.

On April 25, 2023, Two Pitchers emailed ContekPro with an accounting for $98,622.70, representing the costs that Two Pitchers alleges it incurred due to the deficiencies in the container. Arghavani Decl., Ex. 20 (Email re: Breach of Contract Claim); *id.*, Ex. 21 (Pl.'s Third Amended Interrogatories) at 2-3; Hester Dep. at 247:6-249:15.

3

### E. Procedural Background

Two Pitchers filed its original complaint on May 9, 2023 and filed its First Amended Complaint on June 26, 2023. It alleges three causes of action: (1) Breach of Contract; (2) Promissory Estoppel; and (3) Breach of Implied Duty of Good Faith and Fair Dealing. It seeks $98,622.70 in damages, as well as attorneys' fees and costs. First Am. Compl. at 8-9.

As to its breach of contract claim, Two Pitchers alleges ContekPro breached the contract because it failed to deliver a complete, finished Kitchen Container with all necessary approvals and inspections required by applicable law. *Id.* ¶¶ 26-28.

As to its promissory estoppel claim, Two Pitchers alleges it repeatedly conveyed to ContekPro that it could not operate its newly constructed taproom without a functioning kitchen and that, because ContekPro had not completed the container, it would need to pay other contractors to complete it and to secure all necessary approvals and inspections. *Id.* ¶ 30. Two Pitchers alleges it accepted delivery of the container in April 2021 "in express reliance on ContekPro's oral assurance that the Container would be fully inspected and approved shortly after delivery of the Container," and "relied to its detriment on the statement by ContekPro that it would have the Container inspected and approved shortly after its delivery," when "[i]n fact, ContekPro never completed the work necessary for the Container to pass inspections; the Container was not fully inspected and approved until August 2021, after Two Pitchers paid other contracts to engage in extensive additional work to finish the Container and to secure the necessary approvals and inspections." *Id.* ¶ 31. It alleges that "[w]hen it became clear that ContekPro was not willing to complete the work in a timely fashion, Two Pitchers acted in further reliance on ContekPro's position, including the terms of the written contract that it could 'enter a claim for the cost of rectifying any issues' with the Container, and engaged other contractors to complete the work on the Kitchen Container." *Id.* Because Two Pitchers "acted in reliance on the position of ContekPro and incurred the costs needed to complete the Kitchen Container," it alleges ContekPro is required to reimburse it for the costs of the work needed to complete it. *Id.* ¶ 32.

As to its breach of implied duty of good faith and fair dealing claim, Two Pitchers alleges ContekPro committed to deliver a completed container that had all necessary approvals under

4

1  California law, ContekPro was made fully aware that Two Pitchers would be unable to operate its
2  facility without a functioning kitchen, and ContekPro failed to complete the container or secure
3  the necessary inspections and approvals. *Id.* ¶ 34. It further alleges that, "[d]espite promising to
4  cure its breach after delivery, ContekPro never completed the work on the Container, and did not
5  undertake the work needed in order for Two Pitchers to obtain the necessary approvals for its
6  kitchen facilities." *Id.* It alleges ContekPro's conduct "paralyzed the operations of the newly
7  constructed taproom and prevented Two Pitchers from opening its operations." *Id.* Two Pitchers
8  alleges ContekPro's "failure to complete the work on the Container and its unfair use of leverage
9  to paralyze the operations of the newly constructed taproom was willful and a breach of its duty of
10 good faith and fair dealing." *Id.* ¶ 35.

11  Two Pitchers filed its motion for summary judgment on March 18, 2024, arguing there is
12 no genuine dispute as to any of its claims and summary judgment is appropriate. ContekPro filed
13 its cross-motion on April 8, 2024, arguing Two Pitchers' claims are barred by the one-year
14 limitations period provided in its contract.

### III.   LEGAL STANDARD

16  Summary judgment is proper where there is "no genuine dispute as to any material fact and
17 the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving
18 for summary judgment bears the initial burden of identifying those portions of the pleadings,
19 discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*
20 *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome
21 of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a
22 reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477
23 U.S. 242, 248 (1986).

24  If the moving party meets its initial burden, the opposing party must then set forth specific
25 facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S.
26 at 250. All reasonable inferences must be drawn in the light most favorable to the nonmoving
27 party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). However, it is not the
28 task of the Court "'to scour the record in search of a genuine issue of triable fact.'" *Keenan v.*

5

1  *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden "to identify with
2  reasonable particularity the evidence that precludes summary judgment." *Id.*; *Cafasso, U.S. ex rel.*
3  *v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (The nonmoving party "must
4  set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.")
5  (citations omitted). Thus, "[t]he district court need not examine the entire file for evidence
6  establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with
7  adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*,
8  237 F.3d 1026, 1031 (9th Cir. 2001); *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626
9  F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.")
10 (citations omitted).

11 "While the evidence presented at the summary judgment stage does not yet need to be in a
12 form that would be admissible at trial, the proponent must set out facts that it will be able to prove
13 through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010)
14 (citing Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must
15 be made on personal knowledge, set out facts that would be admissible in evidence, and show that
16 the affiant or declarant is competent to testify on the matters stated.")). If the nonmoving party
17 fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not
18 significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50
19 (citations omitted).

## IV. DISCUSSION

### A. Choice of Law

22 In determining the controlling substantive law, a federal court sitting in diversity must look
23 to the forum state's choice of law rules. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (citing
24 *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941)). Under California law, a
25 choice of law provision will be enforced when: (1) the chosen state has a substantial relationship
26 to the parties or their transaction, or there is any other reasonable basis for the parties' choice of
27 law; and (2) the chosen state's law is not contrary to a fundamental policy of California. *Nedlloyd*
28 *Lines B.V. v. Superior Court of San Mateo*, 3 Cal. 4th 459, 464-66 (1992); *Windsor Mills, Inc., v.*

6

*Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 995-96 n. 6 (1972) (parties may expressly agree what law shall govern their contract).

ContekPro argues that Oregon law should govern this dispute. Def.'s Mot. at 4-5. Two Pitchers takes the same position. Pl.'s Mot. at 16-17, Pl.'s Reply at 5 n.4. Where the parties agree on the governing law, the Court need not engage in a choice-of-law analysis. *See Baker v. Cottrell, Inc.*, 2017 WL 6730572, at *3 n.1 (E.D. Cal. Dec. 29, 2017) ("[N]either party has argued that any law other than California law should apply. The court therefore need not engage in a choice of law analysis."); *Sullivan v. Certain Underwriters at Lloyds*, 2016 WL 7422649, at *2 (D. Or. Dec. 22, 2016) ("Because the parties agree that Washington law applies . . . the Court will not perform a choice of law analysis"). Accordingly, Oregon law governs this dispute.

Oregon has adopted a version of the Uniform Commercial Code that applies to the sale of goods. Or. Rev. Stat. § 72.1010, *et. seq*. "Goods" include, inter alia, "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than money in which the price is to be paid, investment securities and things in action." *Id.* § 72.1060(1). There is no dispute that ContekPro's container is a "good," as it was movable at the time of identification to the contract. *See, e.g., Ritz-Craft Corp. v. Stanford Mgmt. Gr.*, 800 F. Supp. 1312, 1317 (1992) (prefabricated housing units built to a buyer's specifications fall within the definition of moveable goods under the UCC, even when the contract requires the manufacturer to arrange for the units' delivery, foundation setting and finish work); *Nw. Bank Billings v. Murnion*, 210 Mont. 417, 422-23 (1984) (holding that modular homes manufactured to specification fall within the definition of movable goods provided by the UCC).

**B.     Statute of Limitations**

Oregon's Uniform Commercial Code provides that an action for the breach of any contract for sale must be commenced within four years after the cause of action accrues. Or. Rev. Stat. § 72.7250(1). Parties to a contract may shorten that time period to not less than one year: "By the original agreement, the parties may reduce the period of limitation to not less than one year but may not extend it." *Id.* "A cause of action for breach of any contract for sale accrues when the breach occurs, regardless of the aggrieved parties' knowledge of the breach." *Id.* § 72.7250(2).

ContekPro argues that any breach of the contract occurred by this time, or by September 9, 2021 at the latest. Def.'s Mot. at 6. It notes that Two Pitchers' letter sent on that date alleges ContekPro "completely breached its agreement with Two Pitchers" and goes on to say that because of the alleged breach, ContekPro failed to deliver "a pre-inspected, completed container as it had committed to do." ContekPro argues that "[s]ince the Kitchen Container had already been completed when the letter was written, it is axiomatic that any breach of the Contract to manufacture the Kitchen Container must have already occurred." *Id.* (quoting September 9, 2021 letter).

Two Pitchers argues its claims are timely because ContekPro breached multiple, separate promises: (1) failing to deliver a pre-inspected, finished container with a California manufactured building sticker, (ii) breaching its oral promise to complete the container and secure all final inspections within a few weeks after delivery, (iii) breaching its written contract by failing to supply Two Pitchers with a container that met all applicable code requirements, and (iv) breaching its written contract by refusing to honor the claim that Two Pitchers submitted in March 2023 for the costs incurred in rectifying deficiencies in the container. Pl.'s Mot. at 14. It maintains the operative business transaction is ContekPro's failure to reimburse Two Pitchers after it submitted a claim pursuant to the terms of the contract in March 2023, two months before it filed this case and well within one year. *Id.*

It is undisputed that the contract provides for a one-year statute of limitations: "Any legal action with respect to any business transaction between ContekPro and its buyer/end users must commence within one year after the cause of action occurs." Contract at 5. "Unambiguous contracts must be enforced according to their terms. Whether the terms of a contract are ambiguous in the first instance is a question of law. If a contract is ambiguous, the trier of fact will ascertain the intent of the parties and construe the contract consistent with the intent of the parties." *Ristau v. Wescold, Inc.*, 318 Or. 383, 387 (1994). "For a term to be legally ambiguous, it must be susceptible to two plausible interpretations when examined in the context of the contract as a whole and the circumstances of contract formation, such as communications and overt acts." *Milne v. Milne Construction Co.*, 207 Or. App. 382, 389 (2006)). "A contract provision is

ambiguous if it has no definite significance or is capable of more than one plausible — that is, sensible and reasonable — interpretation." *Id*. at 388.

The Court finds the language of the contract is unambiguous, requiring any legal action within one year after the cause of action arose. There is also no dispute that the container was completed by September 1, 2021. Arghavani Decl., Ex. 19 (Email re: Container Delay Timeline). Each of Two Pitchers' three causes of action (breach of contract, promissory estoppel and breach of the implied covenant of good faith and fair dealing) seek damages for alleged expenses it incurred to complete the container and to obtain a final inspection. Each of these causes of action necessarily occurred before the container was completed and inspected at least by September 9, 2021, when Two Pitchers' counsel provided notice of Two Pitchers' claims. Arghavani Decl., Ex. 20 (Email re: Breach of Contract Claim) at 2. The letter specifically alleges that ContekPro "completely breached its agreement with Two Pitchers." Since the conduct establishing each of the causes of action occurred by September 9, 2021, and this lawsuit was not commenced until May 9, 2023, Two Pitchers' claims appear to be barred by the one-year contractual limitations period.

Two Pitchers argues the operative "business transaction" is ContekPro's failure to reimburse Two Pitchers after it submitted a claim in March 2023 "for the cost of rectifying any issues" with the container. Pl.'s Opp'n at 8. It notes that ContekPro does not dispute that Two Pitchers sent ContekPro a cost "accounting" on March 29, 2023, and it "believes that the term 'any business transaction' has a clear meaning that encompasses the contractual provision permitting it to 'enter a claim for [] cost[s].'" *Id.* It further argues that, because ContekPro drafted the contract, *see* Hester Dep. at 192:3-25, any ambiguity must be construed against ContekPro as the drafting party. Pl.'s Opp'n at 8-9 (citing *Heinzel v. Backstrom*, 310 Or. 89, 96 (1990) ("Any ambiguity in an agreement is resolved against the party who drafted it.")).

In the "Quality Assurance" section, the contract provides that "If the buildings are not constructed as planned, buyer/end user may enter a claim for the cost of rectifying any issues." Contract at 4. Based on this language, Two Pitchers argues it did not submit its claim to ContekPro until it sent ContekPro the March 29, 2023 email following up on its September 9,

2021 notice, and that ContekPro's failure to pay that claim was a second and distinct breach. Pl.'s Opp'n at 8-9. However, there is no dispute that Two Pitchers' counsel sent the first letter on September 9, 2021, which specifically alleges that ContekPro "completely breached its agreement with Two Pitchers." Arghavani Decl., Ex. 20 at 2 (Email re: Breach of Contract Claim). In response to interrogatories propounded by ContekPro, Two Pitchers admitted submitting a claim for the costs of rectifying any issues to ContekPro on September 9, 2021:

> **INTERROGATORY NO. 3**: Describe in detail, including dates, any and all actions YOU took between September 9, 2021, through March 29, 2023, to seek reimbursement for any and all sums YOU contend CONTEKPRO owes to YOU for materials or work performed within or in connection with the KITCHEN CONTAINER.
>
> **RESPONSE TO INTERROGATORY NO. 3**: Subject to and without waiving any of its Statements and Objections, Two Pitchers responds that on September 9, 2021, Two Pitchers submitted to CONTEKPRO "a claim for the cost of rectifying[ ] issues" with the KITCHEN CONTAINER, as provided by the CONTRACT. CONTEKPRO did not respond to this claim. On March 29, 2023, Two Pitchers offered to settle the claim for $57,125. CONTEKPRO did not respond to this settlement offer.

Two Pitchers provided this verified response three separate times: on December 22, 2023 in its Verified Responses to Interrogatories, on January 9, 2024 in its Verified Amended Responses to Interrogatories, and on February 12, 2024 in its Verified Second Amended Responses to Interrogatories. O'Hare Dec., Exs. A-C, ECF No. 48-6, 48-7, 48-8.

In support of its claim that ContekPro's failure to respond to the March 29, 2023 email is a separate breach of the contract which started the limitations period anew, Two Pitchers cites *Association of Unit Owners of Inn at Otter Crest v. Far West Federal Bank*, 120 Or. App. 125 (1993). In that case, the Oregon Court of Appeals held: "The cause of action for breach of contract accrues when the contract is breached. If independent injuries were caused by independent acts, each act is a separate breach and the statute of limitations begins to run separately as to each alleged breach." *Id.* at 134. However, the key here is that there must be an independent injury caused by the later act. ContekPro's failure to respond to Two Pitchers' March 29, 2023 email did not cause any independent injury to Two Pitchers apart from the costs it incurred to complete the container. Two Pitchers necessarily incurred these costs prior to

10

September 1, 2021, when it completed the container, and certainly by September 9, 2021, when its counsel sent ContekPro a letter providing notice of its claim. *See id.* at 134-35 ("Although they allege ongoing harm in the form of payments due under the sale and lease agreements, they do not allege that the breach itself is ongoing. Consequently, unless the claim relates back to the filing of the original complaint, or to the first amended complaint, it is time-barred.").

Two Pitchers also cites *Tech 7 Systems, Inc. v. Vacation Acquisition, LLC,* 594 F. Supp. 2d 76 (D.D.C. 2009). Pl.'s Mot. at 15. In that case, a software provider filed an action against its customer's successor in interest alleging breach of contract from the alleged unauthorized use of the provider's software. *Tech 7 Sys., Inc.*, 594 F. Supp. 2d at 79. The D.C. District Court noted that, under Oregon law, "'[i]f independent injuries were caused by independent acts, each act is a separate breach and the statute of limitations begins to run separately as to each alleged breach.'" *Id.* at 82 (quoting *Ass'n of Unit Owners of Inn at Otter Crest*, 120 Or. App. at 134). The customer's successor in interest brought a motion for summary judgment contending that the software provider knew of breaches by the customer more than six-years before the lawsuit was commenced and therefore any claims for breach were barred by the statute of limitations. *Id.* In denying the motion, the court found that the plaintiff may be entitled to relief if independent injuries were caused by independent acts performed within the limitations period. *Id.* Here, in contrast, it is undisputed that Two Pitchers' March 2023 demand letter is for costs it incurred in 2021. There is no independent injury that was suffered within the limitations period.

The distinction between acts that cause independent injury and those that do not can be seen by examining a case where the court found such an independent injury. In *Alderson v. State*, judges in Oregon alleged that the State of Oregon wrongfully withheld retirement contributions from their salaries rather than paying the contributions through an employer pickup. 105 Or. App. 574, 576 (1991). The alleged wrongful withholding began in August 1983 and continued until 1987. *Id.* An action was brought in October 1989, a little over six years after the wrongful withholdings began. *Id.* In holding that the claims based on withholdings that occurred within six years of the filing of the action were not time-barred, the Court reasoned that "not all of the harm here was caused by the same act." *Id.* at 580. Since each withholding was a new harm suffered by

the plaintiffs, each deduction was a separate breach with its own six-year limitations period. *Id.* That is not the case here, where Two Pitchers alleges it incurred its damages in 2021.

Two Pitchers also argues its promissory estoppel claim—based on the oral promise that ContekPro made to complete the container and secure all final inspections within a few weeks after its delivery to Oakland—is not subject to the one-year limitations period of the contract because it is derived from a separate oral promise, not the written contract. Pl.'s Mot. at 16.

Claims for promissory estoppel are subject to a six-year limitations period under Oregon law. *See Commc'n Mgmt. Servs., LLC v. Qwest Corp.*, 67 F. Supp. 3d 1159, 1176 (D. Or. 2014), *aff'd in part, rev'd in part on other grounds*, 726 F. App'x 538 (9th Cir. 2018) ("The analogous statute of limitations for a promissory-estoppel claim is six years."). "Promissory estoppel is not an independent cause of action. It is a substitute for consideration, and provides a basis for enforcing a promise as a contract despite a lack of consideration, when the promisee has relied on a promise to his or her detriment." *Natkin & Co. v. H.D. Fowler Co.*, 128 Or. App. 311, 314 (1994) (citing *City of Ashland v. Hoffarth*, 84 Or. App. 265, 270 (1987)). "A promise is enforceable by reason of promissory estoppel if there is: (1) a promise; (2) which the promisor could reasonably foresee would induce conduct of the kind that occurred; (3) actual reliance on the promise; and (4) a substantial change in position by the party seeking to enforce the promise." *Id.* (citing *Schafer et al v. Fraser et ux*, 206 Or. 446, 472 (1956)). "The doctrine is applied if "'injustice can be avoided only by enforcement of the promise.'" *Id.* (quoting Restatement of Contracts § 90 (1932)).

In support of its argument, Two Pitchers cites *Natkin*. In that case, defendants submitted offers to plaintiff to provide certain pumps that varied from the contract specifications provided by plaintiff. 128 Or. App. at 313. When plaintiff contacted defendants about the variations, defendants provided oral assurances that the products would meet all the contract specifications. *Id.* In reliance on these assurances, plaintiff included defendant's offer in a bid to a third party, who awarded plaintiff a subcontract. *Id.* Defendants then refused to provide pumps that complied with the contract specifications. *Id.* Although plaintiff brought a claim for promissory estoppel, the court held: "We need not consider whether plaintiff has stated a claim for breach of contract

12

1  based on a theory of promissory estoppel, because we conclude that plaintiff has sufficiently

2  alleged breach of an express contract." *Id.* at 316 ("[Defendants] offered to supply plaintiff

3  conforming pumps. Plaintiff accepted. [Defendants] breached the parties' agreement by failing to

4  supply those pumps and the plaintiff was damaged.").

Here, as in *Natkin*, the facts support a claim for breach of an express contract. ContekPro offered to sell Two Pitchers a completed kitchen container that would pass inspection, Two Pitchers accepted, and it now alleges ContekPro breached the agreement by failing to supply a completed container. Any oral agreement to complete the container is not separate and apart from the written contract. Indeed, the damages Two Pitchers seeks to recover are the same damages sought in its breach of contract claim. "[T]here is no colorable claim of promissory estoppel where there is actual consideration." *Claus v. Columbia State Bank*, 2019 WL 5624754, at *21 (D. Or. Oct. 30, 2019) (citing *Hill v. Mayers*, 104 Or. App. 629, 631-32 (1990) ("A promissory estoppel presupposes that there is no actual consideration; the estoppel becomes a substitute for consideration.")). Because promissory estoppel is intended as a substitute for consideration, and Two Pitchers' claims are based on the same consideration, there is no separate claim for promissory estoppel. *See Neiss v. Ehlers*, 135 Or. App. 218, 227 (1995) ("[P]romissory estoppel can *only* become necessary as a remedy for an unperformed promise if no traditional contractual remedy is available for the nonperformance.") (emphasis in original) (citing *Schafer*, 206 Or. at 468-81); *Claus*, 2019 WL 5624754, at *22 ("[T]here are sufficient facts to conclude there was actual consideration in the oral agreement, barring a claim of promissory estoppel."). A traditional contractual remedy was available to Two Pitchers but is time-barred by the contractual limitations period.

In sum, the undisputed material facts establish that Two Pitchers' claims are time barred. Summary judgment in ContekPro's favor is therefore appropriate.

**C.     Attorneys' Fees**

As part of its motion, Two Pitchers argues it is entitled to attorneys' fees, regardless of whether it is the prevailing party. Pl.'s Mot. at 18-19. The parties' contract provides that "[s]hould Buyer/end user incur legal expenses or costs, including attorney's fees, due to

ContekPro's breach of any aspect of these Terms and Conditions, or to pursue Buyer/end user's remedies against ContekPro hereunder, ContekPro shall be responsible to Buyer/end user for all such expenses, costs, and fees." Contract at 6. However, as discussed above, Two Pitchers was required to bring any such legal action within the one-year statute of limitations. *Id.* at 5. As it failed to do so, it is not entitled to an award of attorneys' fees.

## V.     CONCLUSION

Based on the analysis above, the Court hereby **DENIES** Two Pitchers' motion for summary judgment and **GRANTS** ContekPro's cross-motion for summary judgment. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: June 5, 2024

THOMAS S. HIXSON
United States Magistrate Judge