1
2
3
4              UNITED STATES DISTRICT COURT

5             NORTHERN DISTRICT OF CALIFORNIA

6

7   W.G. BARR MANAGEMENT, LLC,                Case No. 23-cv-02257-TSH

8                    Plaintiff,

9            v.                               **ORDER GRANTING MOTION FOR
                                              ATTORNEYS' FEES; ORDER RE:**
10  CONTEKPRO LLC,                            **BILL OF COSTS**

11                   Defendant.               Re: Dkt. No. 65

12

13                          **I.    INTRODUCTION**

14          Pending before the Court is Defendant ContekPro, LLC's motion for attorneys' fees.  ECF

15  No. 65.  Plaintiff W.G. Barr Beverage Co. (d/b/a Two Pitchers Brewing Co., "Two Pitchers") filed

16  an Opposition (ECF No. 67) and ContekPro filed a Reply (ECF No. 71).  ContekPro has also filed

17  a bill of costs (ECF No. 66), to which Two Pitchers has filed objections (ECF No. 68).  The Court

18  finds these matters suitable for disposition without oral argument and **VACATES** the August 22,

19  2024 hearing.  *See* Civ. L.R. 7-1(b).  For the reasons stated below, the Court **GRANTS**

20  ContekPro's motion for attorneys' fees and bill of costs.[1]

21                          **II.    BACKGROUND**

22          Two Pitchers is located in Oakland, California.  First Am. Compl. ¶ 8, ECF No. 11.

23  ContekPro is located in Tigard, Oregon.  Attahri Decl. ¶ 3, ECF No. 48-2.  In its complaint, Two

24  Pitchers alleged ContekPro breached their agreement for ContekPro to build and deliver a pre-

25  inspected, finished Kitchen Container to Two Pitchers' taproom in Oakland.  It alleged three

26  causes of action: (1) Breach of Contract; (2) Promissory Estoppel; and (3) Breach of Implied Duty

27  ───────────────

28  [1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos.
    ECF Nos. 55, 60, 61.

*United States District Court*
*Northern District of California*

of Good Faith and Fair Dealing.  On June 5, 2024, the Court denied Two Pitchers' motion for

summary judgment and granted ContekPro's cross-motion for summary judgment.  ECF No. 62

("MSJ Order"); *W.G. Barr Mgmt., LLC v. ContekPro LLC*, 2024 WL 2868146, at *1 (N.D. Cal.

June 5, 2024).  ContekPro filed the present motion and bill of costs on June 19, 2024.

### III.   LEGAL STANDARD

The first issue in assessing any fee application is to determine the governing law.  When

the action is based on diversity, state law governs a party's entitlement to fees.  *Alaska Rent-A-*

*Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 973 (9th Cir. 2013) ("[S]tate law on attorney's

fees is substantive, so state law applies in diversity cases.").  Here, the parties agree, and the Court

has already found, that "Oregon law governs this dispute," as the parties' contract provides for the

application of Oregon law.  MSJ Order at 7; *see also* O'Hare Decl., Ex. A (Contract) at 2, ECF

No. 65-4 ("These terms and conditions shall be construed, interpreted and performed exclusively

according to the laws, excluding conflict of law rules, of the State of Oregon. United States of

America.").

In Oregon, "a court awards attorney fees to a litigant only if a statute or contract authorizes

such an award."  *Swett v. Bradbury*, 335 Or. 378, 381 (2003).  Here, ContekPro seeks attorney's

fees under Oregon Revised Statutes ("ORS") section 20.096, which provides:

> (1) In any action or suit in which a claim is made based on a contract
> that specifically provides that attorney fees and costs incurred to
> enforce the provisions of the contract shall be awarded to one of the
> parties, the party that prevails on the claim shall be entitled to
> reasonable attorney fees in addition to costs and disbursements,
> without regard to whether the prevailing party is the party specified
> in the contract and without regard to whether the prevailing party is a
> party to the contract.

> (3) As used in this section . . ., "contract" includes any instrument or
> document evidencing a debt.

ORS § 20.096.  "Courts' allowance of such fees is mandatory."  *Cape Haze Invs., Ltd. v. Eilers*,

2009 WL 991003, at *1 (W.D. Wash. Apr. 13, 2009) (citing *McConnell v. Sutherland*, 135 Or.

App. 477, 484 (1995)).

"In considering a party's request for attorney fees, the trial court looks, first, to whether the

party is entitled to attorney fees and, second, to the reasonableness of the requested fees."  *Bennett*

1   *v. Baugh*, 164 Or. App. 243, 246 (2000). "The fee applicant bears the burden of establishing

2   entitlement to an award and documenting the appropriate hours expended and hourly rates."

3   *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "The party opposing the fee application has a

4   burden of rebuttal that requires submission of evidence to the district court challenging the

5   accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in

6   its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992).

7   However, "the district court [is] required to independently review plaintiffs' fee request even

8   absent defense objections[.]" *Id.*

9                                **IV.   DISCUSSION**

10  **A.     Rule 59(e) Motion**

11          Two Pitchers' first argument is that ContekPro's motion for attorneys' fees should be

12  denied based on its pending motion to alter or amend judgment, arguing the Court's judgment is

13  based on manifest errors. Opp'n at 1. However, that motion has been denied, *see* ECF No. 73,

14  and this argument is therefore moot.

15  **B.     ContekPro is Entitled to Attorneys' Fees Under Oregon Law**

16          The Dispute Resolution clause of the parties' contract contains a provision that provides

17  for an award of attorney's fees to ContekPro for any fees incurred due to Two Pitcher's breach of

18  the agreement or to pursue any remedies that it may have under the agreement:

19              Should ContekPro incur legal expenses or costs, including attorneys'
                fees, due to Buyer's breach of any aspect of these Terms and
20              Conditions, or to pursue ContekPro's remedies against Buyer
                hereunder, Buyer shall be responsible to ContekPro for all such
21              expenses, costs and fees.

22  Contract at 3. The agreement also contains a reciprocal provision providing for an award of

23  attorneys' fees to Two Pitchers for any fees that Two Pitcher's might incur:

24              Should Buyer/end user incur legal expenses or costs, including
                attorneys' fees, due to ContekPro's breach of any aspect of these
25              Terms and Conditions, or to pursue Buyer/end user's remedies against
                ContekPro hereunder, ContekPro shall be responsible to Buyer/end
26              user for all such expenses, costs, and fees.

27  *Id.*

28          As the Court noted in its MSJ Order, Two Pitchers was required to bring its claims within

United States District Court
Northern District of California

one year after any cause of action occurred, but it failed to do so.  MSJ Order at 8-9; *see also* Contract at 2 ("Any legal action with respect to any business transaction between ContekPro and its buyer /end users must commence within one year after the cause of action occurs.").  There is no dispute that, had Two Pitchers been successful in its action to enforce provisions of the contract, it would have been entitled to recover its attorneys' fees.  *See* Mot. at 5.  As ContekPro incurred legal expenses and costs because of this failure, its expenses are a direct and proximate result of Two Pitcher's breach of this term of the agreement.  Thus, since Two Pitchers would have been entitled to recover its attorneys' fees had it prevailed in this action, section 20.096(1) provides that ContekPro is also entitled to recover its attorneys' fees as the prevailing party.  *See* ORS § 20.096(1) ("[T]he party that prevails on the claim shall be entitled to reasonable attorney fees in addition to costs and disbursements, without regard to whether the prevailing party is the party specified in the contract and without regard to whether the prevailing party is a party to the contract.").  Accordingly, under the reciprocity provision of section 20.096(1), the Court finds ContekPro is entitled to an award of attorneys' fees.

### 1.  ORS § 20.096

Two Pitchers argues section 20.096(1) only applies where a contract provides that attorneys' fees shall be awarded to one of the parties.  Opp'n at 3 ("[T]he statute does not apply where, as here, the contract specifies that both buyer and seller have the right to the recovery of attorneys' fees in specified circumstances.").  In support of its argument, Two Pitchers cites *Jewell v. Triple B. Enterprises*, in which the Oregon Supreme Court explained: "The statute requires reciprocity of recovery of attorneys' fees," with the purpose of "allow[ing] the buyer and the seller the same right to collect attorney fees despite onesided contractual provisions."  290 Or. 885, 887-88 (1981).  Thus, section 20.096 serves a "remedial and reciprocal purpose" by preventing an outcome whereby through "skillful drafting the seller in a contract has the security of attorney fees if he prevails in an action to enforce the primary contractual obligation of the buyer, but the buyer is not allowed fees if he wins in an action to enforce the reciprocal primary contractual obligation of the seller."  *Id.* at 888.  However, in applying *Jewell*, subsequent cases have made clear that "whenever a party to a contract that includes an attorney-fee provision brings 'the kind of action'

4

that the attorney-fee provision contemplates, attorney fees are available to the prevailing party under ORS 20.096 and *Jewell*, regardless of who brought the action." *Awbrey Towers, LLC v. W. Radio Servs., Inc.*, 249 Or. App. 500, 513 (2012); *see id.* at 513 n.5 ("The contract in this case, unlike the *Jewell* contract, is not 'one sided' in the traditional sense; that is, the contract states that attorney fees will be awarded to whichever party prevails in a contract-enforcement dispute initiated by a member of the LLC.  That distinction between the two contracts does not affect our analysis.  The Supreme Court consistently has held that ORS 20.096 applies even to contractual attorney-fee provisions that, by their terms, already are reciprocal in some respects.") (citing *Carlson v. Blumenstein*, 293 Or. 494, 500 n. 3 (1982)); *Benchmark Nw., Inc. v. Sambhi*, 191 Or. App. 520, 524 (2004) ("The inference we draw is that ORS 20.096(1) is, as it is always called, a reciprocity statute, and it should be broadly construed. . . .  Thus, the scope of defendants' attorney fees in this case should mirror the scope of plaintiff's fees, had it prevailed.") (citing *Jewell*, 290 Or. at 888); *Carlson*, 293 Or. at 500 n.3 ("The attorney fee provision involved in this case is, by its terms, reciprocal.  It could be argued that ORS 20.096 has no application because it was intended to deal only with one-sided contractual provisions.  Since 1971, however, this court has applied ORS 20.096 in cases in which the contractual provisions at issue were already reciprocal.") (collecting cases).  Here, as Two Pitchers brought the kind of action that would have entitled it to an award of attorneys' had it prevailed, fees are also available to ContekPro as the prevailing party.

### 2.    Breach of Contract

Two Pitchers also argues its failure to file this case within a year of the breach does not give rise to a breach of contract that would entitle ContekPro to attorneys' fees.  Opp'n at 2.  It argues the contractual provision to file suit within one year is a limitation on legal remedies, not an element of contract performance that could establish a breach of contract.  *Id.*  However, "[d]ismissals based on the expiration of the statute of limitations are treated as dismissal on the merits for the purpose of awarding attorneys' fees." *Yenidunya Invs., Ltd. v. Magnum Seeds, Inc.*, 2012 WL 538263, at *2 (E.D. Cal. Feb. 17, 2012), *aff'd*, 562 F. App'x 560 (9th Cir. 2014).  Thus, courts can award attorney's fees in cases where a plaintiff's case is dismissed on statute of

United States District Court
Northern District of California

United States District Court
Northern District of California

1    limitations grounds.  *See 621 Two, LLC v. Leggett & Platt, Inc.*, 2021 WL 4860687, at *2 (C.D.

2    Cal. Aug. 31, 2021) ("Plaintiff initiated a legal proceeding to enforce the agreement, and because

3    this court found the statute of limitations had run, Defendant was the prevailing party and is

4    therefore entitled to attorneys' fees.").

5    **C.    Evidence of Attorneys' Fees**

6            Two Pitchers next argues the Court should deny ContekPro's motion because it "does not

7    assert that it has, in fact, actually paid or has been billed the fees that it now seeks to recover from

8    Two Pitchers."  Opp'n at 5 (citing *Anderson v. Wheeler*, 214 Or. App. 318, 322 (2007) ("[T]he

9    pertinent meaning of 'incur' is to 'become liable or subject to.' . . . That means that attorney fees

10   are recoverable only if a party has incurred them—that is, has become liable to pay them.")).

11   However, throughout its motion, ContekPro states it "incurred fees".  *See, e.g.*, Mot. at 6

12   ("ContekPro incurred the following for defense of this matter."); *id.* at 4 ("Here, ContekPro

13   incurred significant legal expenses and costs . . . .").  ContekPro's attorneys have also averred in

14   detail to the costs and fees incurred by ContekPro in this action.  *See* O'Hare Decl.; Thomas Decl.

15   This argument is without merit.

16   **D.    Reasonable Fee Award**

17           Under Oregon law, "[i]n determining a reasonable amount of fees to award 'in any case in

18   which an award of attorney fees is authorized or required by statute,' ORS 20.075(2) requires the

19   court to 'consider the factors in subsection (1) of this section'—the factors used to determine

20   whether to award discretionary fees in the first place—as well as other statutory factors contained

21   in subsection (2)."  *Friends of the Columbia Gorge v. Energy Facility Siting Council*, 367 Or. 258,

22   267 (2020).  Section 20.075 establishes factors for courts to considered in determining the size of

23   a fee award.[2]  Subsection (1) directs the Court to consider:

24                   (a) The conduct of the parties in the transactions or occurrences that
                     gave rise to the litigation, including any conduct of a party that was

25

26   _____

27   [2] ORS section 20.075(1) provides factors to consider in determining whether to award attorney
     fees when the award of fees is discretionary, but section 20.075(2) provides that, in determining
     the amount of fees, courts are to consider the factors laid out in both sections.  *See Beck v. Met.*

28   *Prop. & Cas. Ins. Co.*, 2016 WL 4978411, at *12 (D. Or. Sept. 16, 2016), *aff'd*, 727 F. App'x 330
     (9th Cir. 2018) (discussing the dual application).

reckless, willful, malicious, in bad faith or illegal.

(b) The objective reasonableness of the claims and defenses asserted by the parties.

(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190 (Prevailing party fees).

(h) Such other factors as the court may consider appropriate under the circumstances of the case.

ORS § 20.075(1).  Under subsection (2), the Court must also consider the following:

(1) A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees:

(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

(c) The fee customarily charged in the locality for similar legal services.

(d) The amount involved in the controversy and the results obtained.

(e) The time limitations imposed by the client or the circumstances of the case.

(f) The nature and length of the attorney's professional relationship with the client.

(g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

(i) Whether the attorney performed the services on a pro bono basis

or the award of attorney fees otherwise promotes access to justice.

ORS § 20.075(2).

These factors "are frequently captured by the 'lodestar' approach, under which a fee award is 'based on a reasonable hourly rate, multiplied by a reasonable number of hours devoted to work on the case, with certain adjustments potentially made to that amount for factors such as the risk of loss and the quality of the attorney's work.'"  *Friends of the Columbia Gorge*, 367 Or. at 267 (quoting *Strawn v. Farmers Ins. Co.*, 353 Or. 210, 217 (2013).  "What constitutes reasonable attorney fees is within the sound discretion of the court ordering the fee award."  *Id.* (citing ORS § 20.075(3)).

### 1.    Reasonable Hourly Rates

In calculating reasonable hourly rates, courts look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  Generally, the relevant community is the forum where the district court sits.  *Id.*  The applicant bears the burden to produce sufficient evidence that the rates claimed for its attorneys are in line with prevailing market rates.  *Fischer v. SJB-PD, Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (citing *Hensley*, 461 U.S. at 433).  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."  *U. Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  Put differently, the party seeking fees bears the burden to prove the reasonableness of hours expended using detailed time records documenting completed tasks and time expended.  *Hensley*, 461 U.S. at 437; *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) ("It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate.").

When a party seeking fees submits declarations, courts must consider those declarations and cannot substitute that analysis by only considering previous fee awards.  *Roberts*, 938 F.3d at 1024 ("The district court diverged from the applicable standard in discarding the declarations entirely and considering *only* previous fee awards in determining the prevailing market rate.")

1   (emphasis in original).  Indeed, the Ninth Circuit has explained that solely "[e]xamining prior fee

2   awards to [even the same attorneys] in the district [is] not an acceptable substitute for considering

3   declarations submitted by [that attorney], and explaining why those declarations did or did not

4   establish the prevailing hourly rate in the district." *Id.* at 1025.

5        In support of its motion, ContekPro provided the declaration of its counsel from Anderson

6   Zeigler, Richard C. O'Hare, who "ha[s] been the attorney with the most involvement in, and

7   responsibility for, the prosecution and defense of" this matter.  O'Hare Decl. ¶ 2.  Mr. O'Hare

8   graduated from McGeorge School of Law, University of the Pacific with a Juris Doctorate in May

9   of 1993.  *Id.* ¶ 13.  He was admitted to the California State Bar in December 1993.  *Id.*  Mr.

10   O'Hare is registered to practice before all state and federal courts in California, the 9th Circuit

11   Court of Appeal, and the United States Patent and Trademark Office in patent cases.  *Id.*  During

12   the course of this litigation, Mr. O'Hare's time was billed at $450 per hour, the standard rate at

13   which the firm charged most other firm clients for his services.  *Id.* ¶ 14.

14        Attorney Ryan F. Thomas has been a shareholder at Anderson Ziegler, since 2023.  *Id.* ¶

15   16.  Prior to joining Anderson Ziegler, Mr. Thomas was the Managing Shareholder of Johnston |

16   Thomas (presently named Johnston & Associates) for over a decade.  *Id.*  Mr. Thomas graduated

17   from Golden Gate University, School of Law, in California and was admitted to the practice of

18   law in this state on May 25, 2004, and has been actively practicing since that date.  *Id.*  Mr.

19   Thomas's billing rate throughout this litigation was $450 per hour.  *Id.*

20        Paralegal Danielle Bortolussi graduated from Kaplan University obtaining her Paralegal

21   Certificate in 2016.  *Id.* ¶ 17.  Ms. Bortolussi's billing rate at the inception of this litigation was

22   $195.00 per hour and increased to $225.00 per hour on January 1, 2024.  *Id.*

23        ContekPro's fee request also includes work performed by its Oregon attorney, S. Ward

24   Greene of Farleigh Wada Witt, prior to retention of counsel in California.  Mot. at 6-7; Ward

25   Greene Decl., ECF No. 65-2; O'Hare Decl. ¶ 19.  Ward Greene obtained his Juris Doctor in 1973

26   from Duke University and was admitted to practice law in the state of Oregon in 1977.  Ward

27   Greene Decl. ¶ 5.  He is admitted to practice law in the State of Oregon, the Ninth Circuit Court of

28   Appeals, and the U.S. District Court of Oregon.  *Id.*  Ward Greene's hourly rate is $525.00 per

United States District Court
Northern District of California

hour.  *Id.*

In breach of contract cases, courts within this District have awarded hourly rates within the range sought by ContekPro.  *See US Foods, Inc. v. Lalla Holding Corp.*, 2014 WL 4809073, at *2 (N.D. Cal. Sept. 25, 2014), *report and recommendation adopted*, 2014 WL 5281058 (N.D. Cal. Oct. 15, 2014) (finding a rate of $450 per hour reasonable for an attorney with seven years' experience); *Carlson Produce, LLC v. Clapper*, 2020 WL 533004, at *9 (N.D. Cal. Feb. 3, 2020) ($495 per hour reasonable for attorneys with 22 and 24 years of experience); *Lustig v. AzGen Sci. Holdings PLC*, 2020 WL 2614778, at *10 (N.D. Cal. May 21, 2020) (finding reasonable rates ranging from $195 per hour for a paralegal to $645 for a partner); *Marshall Wealth Mgmt. Grp., Inc. v. Santillo*, 2019 WL 79036, at *11 (N.D. Cal. Jan. 2, 2019) (awarding $425 per hour reasonable for attorney with 29 years of experience and $355 per hour for an attorney with over five years' experience); *Superior Consulting Servs., Inc. v. Steeves-Kiss*, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) ("district courts in Northern California have found that rates of $475-$975 per hour for partners and $300-$490 per hour for associates are reasonable."); *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (holding that billing rates for partners in the range of $490 to $975 per hour and rates of non-partner attorneys in the range of $310 to $800, "with most under $500" were reasonable).  Further, in its opposition, Two Pitchers does not object to the requested rates.  As such, the Court finds the hourly rates for the firm's lawyers and paralegal are reasonable.

**2.     Reasonable Hours**

ContekPro claims it incurred the following fees for defense of this matter:

| DESCRIPTION | Attorney Hours | Paralegal Hours |
|---|---|---|
| Case Initiation | 22.5 | 0.90 |
| Pleadings - Initial Filings | 9.00 | 4.20 |
| Pleadings - Case Management | 12.75 | 0.90 |
| Pleadings – Plaintiff's Motion for Judgment on the Pleadings | 1.00 | 0.80 |
| Motions for Summary Judgment | 100.80 | 37.60 |
| Pleadings - Miscellaneous | 4.70 | 1.70 |
| Discovery - Initial Disclosures | 14.60 | 5.30 |
| Mandatory Settlement Conferences | 32.10 | 6.20 |

United States District Court
Northern District of California

| | | |
|---|---|---|
| Discovery - Depositions | 87.70 | 12.60 |
| Discovery – Defendant's Requests and Responses | 49.60 | 27.30 |
| Motion for Attorneys' Fees and Costs | 12.10 | 5.70 |
| Plaintiff's Rule 59 Motion | 20.00 | 2.20 |
| **TOTAL** | **366.85** | **105.40** |

Mot. at 6; O'Hare Decl. ¶ 19; Ward Greene Decl. ¶ 4; O'Hare Suppl. Decl. ¶ 4, ECF No. 72.

Anderson Zeigler, APC charged ContekPro based on the time spent by the firm's attorneys and paralegals, broken into increments of tenths of an hour (.1) multiplied by each attorney's and/or paralegal's regular billing rate at the time. O'Hare Decl. ¶ 10. It uses the billing software known as Sage Timeslips. *Id.* ¶ 11. All time entries are entered into the program by the individual timekeeper and are maintained by the program. *Id.* In each billing cycle there is a Pre-Bill generated in which each assigned attorney reviews the entries for accuracy and applicability. *Id.*

### a.   ORS § 20.075(1) Factors

"The factors under ORS 20.075(1) relate generally to the parties' conduct and the potential deterrent effect of an award." *Tyler Fuqua Creations, Inc. v. Dept. of Rev., TC 5345*, 2019 WL 2067544, at *7 (May 7, 2019). As to the first ("The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal") and second ("The objective reasonableness of the claims and defenses asserted by the parties"), both parties contend these factors weigh in their favor. ContekPro argues Two Pitchers "aggressively pursued its claim from its inception" by filing a motion for judgment on the pleadings at the outset of the case, which the Court took off-calendar after both parties indicated a desire to file summary judgment motions, and that "[e]xtensive discovery was required due to Plaintiff's persistence that the sum of damages sought should not be questioned and took the position that the Contract 'does not contemplate that ContekPro can dispute or second-guess the costs incurred by Two Pitchers.'" Mot. at 2 (quoting Pl's Mot. for Summ. J. at 17, ECF No. 47). Two Pitchers argues it was ContekPro that prolonged the proceedings by "denyi[ng] it had breached the contract and repeatedly asserted this was a factual issue that could not be resolved on the pleadings," which resulted in "a lengthy, expensive discovery process that could have been entirely avoided or at least significantly streamlined." Opp'n at 4.

1       Given the parties' dispute regarding the statute of limitations, which ultimately led to

2   cross-motions for summary judgment, it is not clear that one side was less reasonable than the

3   other in pursuing their litigation strategies.  Two Pitchers argues lengthy discovery was

4   unnecessary because it filed a Rule 12(c) motion for judgment on the pleadings, arguing that the

5   question of breach of contract could be decided as a matter of law based on the pleadings.  *Id.*

6   Two Pitchers' argument seems to be that ContekPro is not entitled to attorneys' fees because

7   ContekPro should have acquiesced to its claims and not defended itself in this action, arguing that

8   the "costly litigation process was the result of ContekPro's decision to dispute issues – at the

9   pleadings stage – that it had no realistic basis to dispute but that could not be resolved on the

10  pleadings given its position."  *Id.* at 4-5.  However, ContekPro ultimately prevailed based on the

11  statute of limitations, meaning this matter could not have been resolved based on Two Pitchers'

12  motion for judgment on the pleadings.  As ContekPro appears to have done what was necessary to

13  defend itself, this factor does not weigh in favor of denying an award of attorneys' fees.

14      As to the third factor ("The extent to which an award of an attorney fee in the case would

15  deter others from asserting good faith claims or defenses in similar cases") and fourth factor ("The

16  extent to which an award of an attorney fee in the case would deter others from asserting meritless

17  claims and defenses"), neither side addresses them, and they do not appear to be at issue here.  For

18  the fifth factor ("The objective reasonableness of the parties and the diligence of the parties and

19  their attorneys during the proceedings"), both sides argue the other unreasonably prolonged these

20  proceedings.  However, as discussed above, it is not clear that one side was less reasonable than

21  the other.  Further, the parties were diligent during the proceedings before the Court.  As such, this

22  factor does not provide a basis to reduce the requested fee.

23      As to the sixth factor ("The objective reasonableness of the parties and the diligence of the

24  parties in pursuing settlement of the dispute"), Two Pitchers argues it "made repeated efforts to

25  resolve this dispute without litigation, for a fraction of the fees that ContekPro now seeks to

26  recover."  Opp'n at 5 (citing ECF Nos. No. 37, 44).  Two Pitchers also argues "ContekPro never

27  engaged with Two Pitchers on these issues, and in fact did not respond to multiple efforts by Two

28  Pitchers to seek a resolution before the litigation began. *Id.*  However, the Court notes the parties

1    participated in two settlement conferences.  ECF Nos. 37, 44.  Further, given that ContekPro

2    prevailed on statute of limitations grounds, it does not appear unreasonable that the parties were

3    ultimately unable to settle.  This is not a reason to reduce the requested fee.

4         Two Pitchers also argues its failure to file this case within a year of ContekPro's alleged

5    breach does not give rise to a breach of contract that would entitle ContekPro to attorneys' fees.

6    Opp'n at 2.  It argues the contractual provision to file suit within one year is a limitation on legal

7    remedies, not an element of contract performance that could establish a "breach" of contract.  *Id.*

8    However, as discussed above, "[d]ismissals based on the expiration of the statute of limitations are

9    treated as dismissal on the merits for the purpose of awarding attorneys' fees."  *Yenidunya*

10   *Investments, Ltd.*, 2012 WL 538263, at *2.  Thus, courts can award attorney's fees in cases where

11   a plaintiff's case is dismissed on statute of limitations grounds.  *621 Two, LLC.*, 2021 WL

12   4860687, at *2.

13        Finally, the seventh factor, the "amount that the court has awarded as a prevailing party

14   fee," does not apply.

15           **b.**       **ORS § 20.075(2) Factors**

16        The factors under section 20.075(2) "generally relate to the reasonableness of the particular

17   fee amount according to various metrics and comparisons."  *Tyler Fuqua Creations, Inc.*, 2019

18   WL 2067544 at *9.  As noted above, these factors "are frequently captured by the 'lodestar'

19   approach," under which "a fee award is based on a reasonably hourly rate, multiplied by a

20   reasonable number of hours devoted to work on the case, with certain adjustments potentially

21   made to that amount for factors such as the risk of loss and the quality of the attorney's work."

22   *Friends of the Columbia Gorge*, 367 Or. at 267 (internal quotation marks and citation omitted).

23   "What constitutes reasonable attorney fees is within the sound discretion of the court ordering the

24   fee award."  *Id.*

25        The parties do not address these factors individually, but the Court finds ORS sections

26   20.075(2)(b) ("The likelihood, if apparent to the client, that the acceptance of the particular

27   employment by the attorney would preclude the attorney from taking other cases"), (d) ("The

28   amount involved in the controversy and the results obtained"), (e) ("The time limitations imposed

United States District Court
Northern District of California

13

by the client or the circumstances of the case"), (f) ("The nature and length of the attorney's professional relationship with the client"), (h) ("Whether the fee of the attorney is fixed or contingent"), and (i) ("Whether the attorney performed the services on a pro bono basis or the award of attorney fees otherwise promotes access to justice") are not at issue here.  Two Pitchers also does not dispute the rates claimed by ContekPro's counsel for purposes of ORS sections 20.075(2)(c) and (g).  The parties also do not discuss ORS section 20.075(2)(a), which concerns the "time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services."  However, these do not appear to be at issue in this relatively simple breach of contract case.

### 3.    Determination of Reasonable Fee Award

Having considered the relevant factors under ORS sections 20.075(1) and (2), the Court finds they weigh in favor of the requested award.  Further, the Court finds ContekPro has documented the hours expended on this lawsuit in sufficient detail.  *See* Mot. at 6-9; O'Hare Decl. ¶¶ 19-30; Thomas Decl. ¶¶ 4-6; O'Hare Suppl. Decl. ¶¶ 4-6.  Finally, Two Pitchers has not raised any argument challenging the accuracy and reasonableness of the hours charged by ContekPro's counsel.  *See Gates*, 987 F.2d at 1397–98 ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits.").  In sum, the Court finds ContekPro has met its burden of demonstrating the number of hours spent was reasonably necessary to the litigation and that counsel made "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  Accordingly, the Court **GRANTS** ContekPro's motion for fees in the amount of $198,903.50.

### E.    Bill of Costs

ContekPro also seeks an award of costs amounting to $875 for service fees, $3,948.55 for deposition fees, and $277.75 for photocopying.  O'Hare Decl. ¶ 31; Bill of Costs, ECF No. 66.

United States District Court
Northern District of California

1      **1.**    **Legal Standard**

2          In federal court, "the award of costs is generally a procedural matter, which means that

3  federal law applies." *Gardner v. Fed. Express Corp.*, 2016 WL 1559686, at *1 (N.D. Cal. 2016),

4  *aff'd*, 719 F. App'x 559 (9th Cir. 2017); *Rodriguez v. New Hampshire Ball Bearings, Inc.*, 2019

5  WL 6711685, at *2 (C.D. Cal. Aug. 30, 2019) ("Even where state law controls the substance of a

6  lawsuit, an award of costs is a procedural issue governed by federal law"). Federal Rule of Civil

7  Procedure 54(d)(1) provides that "costs other than attorneys' fees shall be allowed as of course to

8  the prevailing party unless the court otherwise directs." Unless otherwise authorized by statute or

9  contract, 28 U.S.C. § 1920 limits the costs that a court may award under Rule 54(d) to the

10  following:

11          (1) Fees of the clerk and marshal;

12          (2) Fees for printed or electronically recorded transcripts necessarily
            obtained for use in the case;

13

14          (3) Fees and disbursements for printing and witnesses;

15          (4) Fees for exemplification and the costs of making copies of any
            materials where the copies are necessarily obtained for use in the case;

16          (5) Docket fees under section 1923 of this title; [and]

17          (6) Compensation of court appointed experts, compensation of
            interpreters, and salaries, fees, expenses, and costs of special
18          interpretation services under section 1828 of this title.

19  "With regard to individual itemized costs, 'the burden is on the party seeking costs . . . to establish

20  the amount of compensable costs and expenses to which it is entitled.'" *City of Alameda v.*

21  *Nuveen Mun. High Income Opportunity Fund*, 2012 WL 177566, at *1 (N.D. Cal. Jan. 23, 2012)

22  (quoting *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248–49 (10th Cir. 2002)).

23          "By its terms, the rule creates a presumption in favor of awarding costs to a prevailing

24  party, but vests in the district court discretion to refuse to award costs." *Ass'n of Mexican-Am.*

25  *Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000) (citation omitted). The Ninth

26  Circuit has described the presumption in favor of awarding costs to the prevailing party as a

27  "strong presumption" with a burden on the non-prevailing party to show why taxable costs are not

28  recoverable. *Miles v. State of California*, 320 F.3d 986, 988 (9th Cir. 2003); *see also Stanley v.*

*Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999). Thus, a district court need not give reasons for abiding by the presumption and awarding taxable costs to the prevailing party. *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003) ("The presumption itself provides all the reason a court needs for awarding costs . . . ."). On the other hand, a district court must "specify reasons" for refusing to award taxable costs to the prevailing party. *Id.* The court must "explain why . . . it would be inappropriate or inequitable to award costs." *Ass'n of Mex.-Am. Educators*, 231 F.3d at 593. A court may deny costs based on (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014). "This is not an exhaustive list of 'good reasons' for declining to award costs, but rather a starting point for analysis." *Id.* (quoting *Ass'n of Mex.-Am. Educators*, 231 F.3d at 593) (internal quotation marks omitted).

### 2.      Analysis

The Court finds ContekPro has met its burden to establish the costs to which it is entitled. As to its request for $875 in service fees, reimbursement is permitted under the Civil Local Rules. *See* Civ. L.R. 54-3(a)(2) ("Fees for service of process by someone other than the marshal acting pursuant to Fed. R. Civ. P. 4(c) are allowable to the extent reasonably required and actually incurred.").

ContekPro also seeks $,3948.55 for deposition costs, including transcripts, video recording, and photocopying for exhibits used during depositions. 28 U.S.C. § 1920(2) allows recovery for "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." Under Civil Local Rule 54-3(c)(1), a prevailing party may recover "[t]he cost of an original and one copy of any deposition (including videotaped depositions) taken for any purpose in connection with the case." Civ. L.R. 54-3(c)(1); *see also In re Ricoh*, 661 F.3d 1361, 1370 (Fed. Cir. 2011) (affirming a decision by a court in the Northern District of California to tax costs for both videotaping and transcribing a deposition). Federal Rule of Civil Procedure 34(b)(3)(A) specifically allows depositions to be "recorded by audio, audiovisual, or stenographic means." In

interpreting Civil Local Rule 54-3(c)(1), courts in this district have allowed costs for deposition video recordings "where the circumstances of the case warrant duplicate costs of both a videotape and written transcript of a deposition." *Total Recall Techs. v. Luckey*, 2017 WL 2118297, at *1 (N.D. Cal. May 16, 2017). Further, the "cost of reproducing exhibits to depositions is allowable if the cost of the deposition is allowable." Civ. L.R. 54-3(c)(3); 28 U.S.C. § 1920(4) (permitting "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case").

While it does not dispute these individual costs, Two Pitchers argues the Court should deny ContekPro's request on three grounds: (1) based on Two Pitchers' pending motion to alter or amend judgment: (2) based on its limited financial resources; and (3) based on ContekPro's litigation tactics. Obj., ECF No. 68.

### a.   Motion to Alter or Amend Judgment

As to the first reason, Two Pitchers argues the Court's judgment is based on two manifest errors of law and fact, and that, upon correction of those errors, Two Pitchers would be entitled to judgment in its favor on its contract claims. *Id.* at 1. "In that circumstance, ContekPro would not be the 'prevailing party' and thus would not be entitled to costs under Rule 54(d)(1)." *Id.* However, the Court has denied Two Pitchers' motion to alter judgment by separate order. This argument is therefore moot.

### b.   Financial Resources

As to the second reason, Two Pitchers argues it has limited financial resources, and this litigation has been a severe drain on its finances. *Id.* (citing Hester Decl. ¶¶ 1-2, ECF No. 68-1). It argues: "Particularly considering that ContekPro ultimately conceded that it breached the contract (for instance, by failing to deliver a container with a California manufactured building sticker, despite the contractual 'guarantee' it would do so), . . . it would be inequitable to impose further costs on Two Pitchers after it was deprived of the benefit of the contract it had paid for." *Id.* at 1-2. Thomas Hester, a co-founder and the Chief Operating Officer of Two Pitchers, provided the following information regarding Two Pitchers' finances:

1. Two Pitchers is carrying debt obligations in the total amount of

$3,419,600.  Most of this debt was incurred in the construction of its taproom in Oakland, California.  Two Pitchers has yet to generate sufficient operating profits to pay down that debt.

2. In calendar year 2022, Two Pitchers generated a net operating profit of $101,848.  In calendar year 2023, Two Pitchers generated a net operating profit of $36,047. Through June 15, 2024, Two Pitchers has generated a net operating loss of $24,449.

Hester Decl. ¶¶ 1-2.

Given the presumption that a prevailing party is entitled to an award of costs, the Court finds this declaration, on its own, does not provide enough information to overcome the presumption in favor of awarding costs.  *See Rodriguez*, 2019 WL 6711685, at *3 ("A plaintiff challenging costs on this basis 'must provide the court with sufficient documentation such as affidavits, statements of assets and income, and a schedule of expenses' demonstrating financial hardship") (quoting *Rossi v. City of Chicago*, 790 F.3d 729, 738 (7th Cir. 2015)); *Huerta v. Wolf*, 2020 WL 6319132, at *2 (S.D. Cal. Oct. 28, 2020) (denying plaintiff's motion to retax costs, explaining that plaintiff "paid the filing fee to initiate this action, he is not proceeding in forma pauperis, he is gainfully employed, and has not otherwise provided evidence in support of his claim of financial hardship").

Further, the total cost here is $5,101.30, which is a relatively small award.  *Compare Save Our Valley*, 335 F.3d at 946 (upholding the "relatively small sum" of $5,310.55), *with Stanley*, 178 F.3d at 1080 (declining to award the "high cost" of $46,710.97 against an unemployed civil rights plaintiff), *and Ass'n of Mexican–American Educators*, 231 F.3d at 593 (holding no abuse of discretion in denying "overwhelming" and "extraordinarily high" costs of $216,443.67 against plaintiffs whose "resources are limited").  Moreover, even if there were a financial disparity between the parties (which Two Pitchers has not shown), this is insufficient to rebut Rule 54's presumption that a prevailing party is entitle to an award of costs.  *See Ayala v. Pac. Mar. Ass'n*, 2011 WL 6217298, at *2 (N.D. Cal. Dec. 14, 2011) ("[Economic] disparity alone is insufficient to overcome the presumption in favor of awarding costs."); *Powell v. Adlerhorst Int'l, Inc.*, 2017 WL 1371269, at *3 (D. Or. Apr. 12, 2017) ("[E]conomic disparity alone is not necessarily sufficient to overcome the presumption in favor of awarding costs.  If it were, every case that involved economically disparate parties would warrant the denial of costs, making the presumption

United States District Court
Northern District of California

18

somewhat meaningless.") (citations omitted); *Huerta*, 2020 WL 6319132, at \*2.  Accordingly, while the Court acknowledges Two Pitchers' financial condition, it concludes Two Pitchers has not made a showing that overcomes the presumption outlined in Rule 54(d)(1).

### c.  Litigation Tactics

Finally, Two Pitchers argues "the litigation tactics employed by ContekPro—which needlessly expanded this litigation into full-blown discovery—counsel against an award of costs." Obj. at 2.  However, as discussed above, both parties have raised similar arguments about their adversary's litigation tactics, but there is no indication that either party's litigation tactics rise to the level of misconduct.  *See Camfield v. Bd. of Trustees of Redondo Beach Unified Sch. Dist.*, 2018 WL 910459, at \*5 (C.D. Cal. Feb. 14, 2018) (finding litigation tactics did not weigh in favor of denying costs where "Defendants did not engage in misconduct, and the issues were not close and difficult.  Plaintiffs' state claims were dismissed very early in the case. . . .  The remaining claims were decided on summary judgment—some of which were not contested—and the case was not 'vigorously litigated' or so complex as to justify denying costs to the prevailing party."); *cf. Schaulis v. CTB/McGraw–Hill, Inc.*, 496 F. Supp. 666, 680 (N.D. Cal. 1980) (denying taxable costs to the defendant at least in part because the case was "vigorously litigated").  As such, this is not a reason to deny ContekPro's request for costs.

### d.  Summary

In sum, the presumption in favor of awarding costs, which "provides all the reason a court needs for awarding costs," *Save Our Valley*, 335 F.3d at 945, outweighs any argument in favor of denying them.  Accordingly, the Court awards $5,101.30 in costs.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** ContekPro's motion for attorneys' fees and costs.  ContekPro is awarded $198,903.50 in attorneys' fees and $5,101.30 in costs.

**IT IS SO ORDERED.**

Dated: August 15, 2024

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California